**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNNSYLVANIA**

| | |
|---|---|
| **BRAD AND LISA BOWSER**<br>1417 Diamond Station Road<br>Ephrata, PA 17522,<br>           **Plaintiffs**<br>     v.<br><br>**MESSMER'S, INC.**<br>**Previously d/b/a World of Stains and Rocky Mountain Paint Company**<br>9500 S. Hawley Park Road<br>West Jordan, UT 84088,<br>           **Defendant** | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs, Brad and Lisa Bowser, by and through undersigned counsel, hereby demands judgment against Defendant, and complains against them as follows:

**PARTIES**

1.     Plaintiffs, Brad and Lisa Bowser (hereinafter "Plaintiffs") were, at all times relevant hereto, Pennsylvania citizens who were the owners and occupants of the residential property located at 1417 Diamond Station Road in Ephrata, Pennsylvania (hereinafter the "subject property").

2.     At all times relevant hereto, Defendant, Messmer's, Inc. (hereinafter "Messmer's") was and is, upon information and belief, a Utah corporation with its primary place of business at the above-captioned address, and was authorized to do business within the Commonwealth of Pennsylvania.  Upon information and belief, Messmer's is in the business of,

...

*inter alia*, designing, assembling, manufacturing, selling, distributing and/or marketing wood stains, finishes, cleaning and surface prep products such as, *inter alia*, Messmer's Composite Deck Finish. Upon further information and belief, Defendant Messmer's undertakes a significant amount of selling, distributing and/or marketing wood stains, finishes, cleaning and surface prep products such as, *inter alia*, the above-mentioned Messmer's Composite Deck Finish within Lancaster County, Pennsylvania.

## JURISDICTION AND VENUE

3. Jurisdiction is based on 28 U.S.C §1332(a)(1) as this action involves a controversy between citizens of different states; namely, Plaintiffs being citizens of the Commonwealth of Pennsylvania and Defendant a corporation organized and existing within the State of Utah. Moreover, the amount in controversy, exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

4. Venue is proper in this district based on 28 U.S.C §1391(a) because the events giving rise to this claim occurred within this district, specifically in Lancaster County, Pennsylvania.

## FACTUAL BACKGROUND

5. At some time prior to May 2, 2020, the Bowsers purchased for use at the subject property, a container of Messmer's Composite Deck Finish (hereinafter "subject stain product").

6. On or about May 2, 2020, Mr. Bowser used brushes to apply the subject stain product to his deck, which was located on the rear portion of the subject property.

7. After completing approximately 50% of the staining of the deck, he stopped for the day and placed the brushes and subject stain product underneath the deck.

8. Later that night, a fire erupted at the subject property.

9. The fire resulted in extensive damage to Plaintiffs' real and personal property, as well as, the imposition of additional expenses and hardship.

10. The fire was directly and proximately caused by the spontaneous combustion of rags containing the subject stain product, and as further and more fully described below.

11. As a direct and proximate result of the aforementioned defects, Plaintiffs sustained the damages described herein in an amount in excess of $75,000.00.

## **COUNT I – STRICT LIABILITY**

12. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

13. At all relevant times hereto, Messmer's was engaged in the business of designing, formulating, manufacturing, distributing, testing, packaging, marketing, labeling and/or selling the subject stain product.

14. The subject stain product designed, formulated, manufactured, distributed, tested, packaged, marketed, labeled and/or sold by Messmer's, reached users and/or consumers without any material change in its condition or design.

15. Plaintiffs were the intended users/consumers of the subject stain product, formulated, manufactured, distributed, tested, packaged, marketed, labeled and/or sold by Messmer's.

16. Messmer's expected that the subject stain product would reach its users and consumers thereof without any material change in its condition or design.

17. The subject stain product as designed, formulated, manufactured, distributed, packaged, marketed, tested, labeled and/or sold by Messmer's was defective and unreasonably dangerous and/or hazardous in design as it lacked proper and adequate warnings, instructions and/or advices as to how to properly use, handle, dispose of and store materials exposed to or affected by the subject stain product.

18. Further, the subject stain product as designed, formulated, manufactured, distributed packaged, marketed, tested, labeled and/or sold by Messmer's, was defective and unreasonably dangerous for the ordinary and intended use of the product in the following particular aspects:

   (a) failing to design, manufacture, formulate, distribute, market, label and/or sell the subject stain product while properly and safely eliminating the avoidable danger of self-heating and/or spontaneous combustion;

   (b) designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the subject stain product which contained the defective, dangerous and hazardous propensity of self-heating and/or spontaneous combustion if materials used in the application of the aforementioned product were not properly disposed of and/or discarded;

   (c) failing to adequately warn Plaintiffs and other consumers or users that the subject stain product and by-products thereof were susceptible to self-heating and spontaneous combustion;

   (d) failing to provide Plaintiffs and other consumers or users of the subject stain product with adequate information, instructions or warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts; and/or

   (e) failing to provide Plaintiffs and other consumers or users of the subject stain product with adequate and conspicuous warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts of the subject stain product, which possess the dangerous and/or hazardous propensity for self-heating and/or spontaneous combustion.

19. The design, formulation, manufacturing, distribution, testing, packaging, marketing, labeling and/or sale of the subject stain product with the aforementioned defects and/or inadequacies in warnings, made the subject stain product defective and unreasonably dangerous for its intended use.

20. At all times material hereto, the subject stain product designed, formulated, manufactured, distributed, packaged, marketed, tested, labeled and/or sold by Messmer's was used for the purpose and in the manner intended and/or expected by Messmer's.

21. The defective and dangerous condition of the subject product stain proximately caused a fire to occur at the subject property, which resulted in damages to Plaintiffs.

22. Therefore, Messmer's is strictly liable to Plaintiffs under applicable case law, statutes and standards within the Commonwealth of Pennsylvania.

23. As a direct and proximate result, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses in an amount in excess of $75,000.00.

24. As a direct and proximate result, Plaintiffs suffered inconvenience, discomfort and the loss of the use and enjoyment of their property.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant Messmer's in an amount in excess of $75,000.00, plus interest, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT II – NEGLIGENCE

25. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

26. Messmer's had a duty to exercise reasonable care in the design, formulation, manufacture, distribution, testing, warning, labeling, packaging and instruction and/or sale of the subject stain product, including a duty to ensure that the product did not expose users or consumers, such as Plaintiffs, to an unreasonable risk of harm and/or danger and that any unreasonable hazard and/or danger associated with the product was properly and adequately warned against.

27. Messmer's owed Plaintiffs and other users or consumers of the subject stain product a duty to act with reasonable care in the design and manufacture of the subject stain product to provide a reasonably safe product and eliminate avoidable dangers, such as the unreasonably dangerous and hazardous propensity for self-heating and/or spontaneous combustion.

28. Messmer's also owed Plaintiffs and other users and consumers of the subject stain product a duty to provide adequate warnings and/or instruction concerning safe disposal and/or storage of materials exposed to or affected by the subject stain product, including by-products thereof, produced during ordinary and intended use.

29. Messmer's breached its duties of care to Plaintiffs and was negligent in:

   (a) designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain product that is unreasonably dangerous and/or hazardous;

   (b) designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain product and failing to eliminate the avoidable danger of self-heating and/or spontaneous combustion;

   (c) failing to conform its conduct in designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain product, when it knew, or should have known, that its product contained the dangerous and hazardous propensity of self-heating and/or

      spontaneous combustion if materials used in the application of the aforementioned product were not properly disposed of and/or discarded;

(d) failing to offer consumers, such as Plaintiffs, a less-hazardously designed and/or formulated product that would perform comparably to the actual product sold without its inherent damages (including its propensity to self-heat / spontaneously combust);

(e) failing to adequately warn Plaintiffs and other consumers or users that the subject stain product and byproducts thereof were susceptible to self-heating and spontaneous combustion;

(f) failing to provide Plaintiffs and other consumers or users of the subject stain product with adequate information, instructions or warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts; and/or

(g) failing to provide Plaintiffs and other consumers or users of the subject stain product with adequate and conspicuous warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts of the subject stain product, when it knew or should have known dangerous and/or hazardous propensity of the subject stain product for the self-heating and/or spontaneous combustion and the safe disposal and/or storage of materials exposed to or affected by the product and byproducts.

(h) failing to provide, establish, and/or follow proper and adequate controls so as to avoid the problems enumerated in the subparagraphs above;

(i) failing to perform the above measures in conformity with the prevailing and safe industry and governmental specifications and standards;

(j) failing to adequately warn Plaintiffs and others of the dangers and hazardous conditions resulting from the careless and negligent conduct set forth in the subparagraphs above;

(k) failing to retain, employ, and/or contract with adequate and proper individuals to undertake the measures set forth in the subparagraphs above; and/or

  (l)  failing to properly train the individuals who were retained, employed or contracted with to undertake the measures set forth in the subparagraphs above.

30. Messmer's owed Plaintiffs a number of noted duties and breached said duties.

31. As a direct and proximate result of the negligence and carelessness of Messmer's, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses in an amount in excess of $75,000.00.

32. As a direct and proximate result of the negligence and carelessness of Messmer's, Plaintiffs suffered inconvenience, discomfort and the loss of the use and enjoyment of their property.

**WHEREFORE**, Plaintiffs demands judgment in their favor and against Messmer's in an amount in excess of $75,000.00, plus interest, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT III - BREACH OF IMPLIED WARRANTY

33. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

34. At the time Messmer's designed, manufactured, formulated, marketed, distributed, labeled and/or sold the subject stain product, Messmer's knew of the use for which the product was intended, and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

35. Contrary to such implied warranties, the subject stain product was not of merchantable quality, and/or fit and safe for its intended use because it was defective in design as Messmer's failed to properly warn users or consumers that the product and by-products was

susceptible to self-heating and spontaneous combustions; and/or failed to properly warn or instruct users or consumers concerning the safe disposal and/or storage of materials exposed to or affected by the product and by-products.

36. Contrary to such implied warranties, the subject stain product was not of merchantable quality, and/or fit and safe for its intended use because it was defective in design because it had unnecessary components that created a dangerous and hazardous propensity of self-heating and/or spontaneous combustion if materials used in the application of the aforementioned product were not properly disposed of and/or discarded

37. Messmer's breached its implied warranty of merchantability as set out in 13 Pa. C.S.A. § 2314 and the common law of the Commonwealth of Pennsylvania in that the product was not fit for the ordinary uses for which the product was used, as noted herein and above.

38. At the Plaintiffs' home, the subject stain product Stain functioned improperly in the absence of abnormal use and reasonable secondary causes.

39. Plaintiffs' damages occurred as a direct and proximate result of Messmer's breach of their implied warranty of merchantability as set out in 13 Pa. C.S.A. § 2314 and the common law of the Commonwealth of Pennsylvania.

40. As a natural and foreseeable consequence of this breach, the fire occurred at the subject property, which resulted in Plaintiffs' damages.

41. As a direct and proximate result of the aforementioned breaches, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses in an amount in excess of $75,000.00.

42. As a direct and proximate result of the aforementioned breach, Plaintiffs suffered inconvenience, discomfort and the loss of the use and enjoyment of their property.

**WHEREFORE**, Plaintiffs demands judgment in their favor and against Defendant Messmer's in an amount in excess of $75,000.00, plus interest, delay damages, and such other relief as the Court deems appropriate under the circumstances.

                                                    **de Luca Levine LLC**

**Dated:** February 4, 2021      **BY:** _____
                                                          Kenneth T. Levine (PA Atty. ID No. 60984)
                                                          klevine@delucalevine.com
                                                          Raymond E. Mack (PA Atty. ID No. 91815)
                                                          rmack@delucalevine.com
                                                          Three Valley Square, Suite 220
                                                          Blue Bell, PA 19422
                                                          (215) 383-0081 / (215) 383-0082 (fax)
                                                          ATTORNEYS FOR PLAINTIFFS

## **JURY DEMAND**

Plaintiffs demands a trial by jury on all issues triable by right to jury.

                                               **BY:** _____
                                                        Kenneth T. Levine, Esquire